UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

FRANKLIN FUELING SYSTEMS,
INC.,
                                    CIV. NO. S-09-580 FCD/JFM
          Plaintiff,

     v.                             <u>MEMORANDUM AND ORDER</u>

VEEDER-ROOT COMPANY and DOES 1
through 20,

          Defendants.
                         ----oo0oo----

     This matter is before the court on defendant Veeder-Root

Co.'s ("Veeder-Root" or "defendant") motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Franklin

Fueling Systems, Inc. ("Franklin" or "plaintiff") opposes the

motion.  For the reasons set forth below, defendant's motion to

dismiss is DENIED.[1]

///

---

[1]     Because the court finds that oral argument will not be
of material assistance, the court orders this matter submitted on
the briefs.  E.D. Cal. L.R. 78-230(h).

**BACKGROUND**[2]

In March 2000, the California Air Resources Board ("ARB") adopted regulations requiring most gas stations to upgrade vapor recovery systems over a period of ten years. (Pl.'s First Am. Compl. [Docket # 20], filed May 26, 2009, ¶ 15.)  These regulations included a requirement that gas stations upgrade vapor recovery systems with Enhanced Vapor Recovery ("EVR") systems by April 1, 2009, and that they install in-station diagnostics ("ISD") systems by September 1, 2009. (Id.)  In order to comply with the ARB regulations, EVR systems must be ARB-certified. (Id. at ¶ 17.)

The Healy Phase II Enhanced Vapor Recovery System ("Healy System"), initially owned by the inventor, Jim Healy, was ARB-certified on April 8, 2005. (Id.)  The Veedor Root ISD, certified on August 31, 2005, was the first ISD system to be ARB-certified. (Id. at ¶ 18.)  In September 2006, Franklin bought and obtained rights to the Healy System. (Id. at ¶ 20.)  On November 5, 2007, Vapor System Technologies, Inc. ("VST") obtained certification for an EVR System. (Id. at ¶ 21.) Sometime thereafter, Veeder-Root designed the Veeder-Root Carbon Canister, a component which replaced the VST vapor processor of the VST System. (Id.)  On October 17, 2008, ARB certified the use of the Veeder-Root Carbon Canister with the VST Sytem ("VR/VST System"). (Id.)  Plaintiff alleges that the VR/VST System was substantially less expensive than the VST System. (Id.)

_____

[2]    The court recounts the facts as set forth in plaintiff's first amended complaint, filed May 26, 2009.

2

1    Plaintiff contends that prior to the certification of the
2  VST System, the Healy System controlled 100% of the market, but
3  nevertheless maintained 95% of the market after the introduction
4  of the competing system through early 2009.  (<u>Id.</u> at ¶ 23.)
5  Plaintiff claims that Veeder-Root began distributing marketing
6  materials that made false factual statements about the Healy
7  System, allegedly stating that (1) one in four Healy Systems
8  failed, and (2) that an ARB investigation had concluded that
9  problems with the Healy System were triggering alarms on the
10  Veeder-Root ISD, causing the Veeder-Root ISD to shut down
11  dispensers.  (<u>Id.</u> at ¶ 24.)  Plaintiff claims that Veeder-Root's
12  allegedly false statements were largely based upon problems with
13  false alarms that gas station owners began reporting in late 2008
14  when using Veeder Root ISDs in conjunction with the Healy System.
15  (<u>Id.</u> at ¶ 25.)  Plaintiff alleges that the problem with false
16  alarms did not arise when the Healy System was used in
17  conjunction with the Incon ISD.  (<u>Id.</u>)  Plaintiff claims that
18  when false alarms occurred frequently, the Veeder-Root ISD shut
19  down all of the station's fueling dispensers, requiring a
20  technician to reset the system.  (<u>Id.</u>)  By contrast, plaintiff
21  claims, the Incon ISD shuts down only the fueling dispenser
22  responsible for triggering the alarms.  (<u>Id.</u>)

23    After receiving a number of complaints, plaintiff alleges
24  the ARB instituted an investigation into the cause of the false
25  alarms.  (<u>Id.</u> at ¶ 26.)  Plaintiff claims that the ARB advised
26  Franklin and Veeder-Root not to publicize statements regarding
27  the cause of the false alarms until it completed its
28  investigation.  (<u>Id.</u>)  Plaintiff alleges that though ARB has not

3

1  yet reached a formal conclusion as to the cause of the false
2  alarms, it released a PowerPoint presentation to the California
3  Pollution Control Officers' Association ("CAPCOA") concerning its
4  tentative findings.  (Id.)

5       Plaintiff claims that around February 12, 2009, Veeder-Root
6  began circulating certain materials containing false statements,
7  using the CAPCOA presentation to make it appear as if ARB
8  endorsed the allegedly false statements.  (Id. at ¶ 27.)
9  Specifically, plaintiff asserts that defendant circulated an
10 email containing the allegedly false statements, with ARB's
11 PowerPoint presentation and a Veeder-Root marketing document
12 attached (hereinafter, the "Marketing Materials").  (Id.)
13 Plaintiff contends that the statements were false in the
14 following ways: (1) ARB did not find a 22% failure rate for the
15 Healy System, nor did it find that one in four Healy Systems
16 needed to be replaced; (2) the contention that Healy Systems
17 "contribute to site maintenance costs" is factually incorrect, as
18 it is the conjunction of the Veeder-Root ISD System with the
19 Healy System that leads to increased maintenance costs; (3) ARB
20 has not reached a conclusion that the Healy System is the cause
21 of the false alarms, and Veeder-Root's contention otherwise is in
22 violation of ARB's advisory that Veeder-Root and Franklin refrain
23 from issuing public announcements regarding the cause of the
24 false alarms.  (Id. at ¶¶ 29-31.)  Plaintiff alleges that these
25 false statements, among others, have been distributed to the
26 public in California and other states, including potential
27 purchasers of the Healy System.  (Id. at ¶ 32.)  Plaintiff
28 further contends that the dissemination of the false statements

1  in the Marketing Materials have damaged Franklin through

2  significant losses in its market share for EVR Systems, evidenced

3  by a reduction in its market share from 95% to 75%-50%, resulting

4  in the loss of millions of dollars.  (<u>Id.</u> at ¶ 33.)

5                                **STANDARD**

6        On a motion to dismiss, the allegations of the complaint

7  must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322

8  (1972).  The court is bound to give the plaintiff the benefit of

9  every reasonable inference to be drawn from the "well-pleaded"

10 allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>

11 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

12 need not necessarily plead a particular fact if that fact is a

13 reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

14       Nevertheless, it is inappropriate to assume that the

15 plaintiff "can prove facts which it has not alleged or that the

16 defendants have violated the . . . laws in ways that have not

17 been alleged."  <u>Associated Gen. Contractors of Calif., Inc. v.</u>

18 <u>Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

19 Moreover, the court "need not assume the truth of legal

20 conclusions cast in the form of factual allegations."  <u>United</u>

21 <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th

22 Cir. 1986).  Indeed, "[t]hreadbare recitals of the elements of a

23 cause of action, supported by mere conclusory statements, do not

24 suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)(citing

25 <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

26       In ruling upon a motion to dismiss, the court may consider

27 only the complaint, any exhibits thereto, and matters which may

28 be judicially noticed pursuant to Federal Rule of Evidence 201.

                                   5

1  See Mir v. Little Co. of Mary Hospital, 844 F.2d 646, 649 (9th

2  Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United

3  States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

4       Ultimately, the court may not dismiss a complaint in which

5  the plaintiff alleged enough facts to "state a claim to relief

6  that is plausible on its face." Iqbal, 129 S. Ct. at 1949

7  (citing Bell Atlantic Corp. v. Twombly, 550 U.S. at 570August 8,

8  2009).  Only where a plaintiff has failed to "nudge [his or her]

9  claims across the line from conceivable to plausible," is the

10 complaint properly dismissed.  Id. at 1952.  When there are well-

11 pleaded factual allegations, "a court should assume their

12 veracity and then determine whether they plausibly give rise to

13 an entitlement to relief." Id. at 1950.

14                          **ANALYSIS**[3]

15 **A.    Lanham Act**

16      Plaintiff's first cause of action is for false and

17 misleading advertising pursuant to the Lanham Act, 15 U.S.C.

18

19 ───────────────

20      [3]      Preliminarily, the court notes that, in large part, the
   parties' briefing contains factual arguments which are irrelevant
21 to a Rule 12(b)(6) motion, and thus, the court has disregarded
   those arguments and does not address them herein.  For example,
22 defendant asks the court to "decide whether Veeder-Root's
   statements were 'false' simply by comparing the ARB presentation
23 to Veeder-Root's summary of it." (Def.'s Mot. to Dismiss at 7.)
   Plaintiff responds to defendants' factual contentions in its
24 opposition.  However, such disputes are not relevant at this
   stage of the proceedings; rather, resolution of factual disputes
25 must await summary judgment or trial.  See Cook, Perkiss & Liehe,
   Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 245 (9th
26 Cir. 1990) (stating "[i]t is well-established that questions of
   fact cannot be resolved or determined on a motion to dismiss for
27 failure to state a claim upon which relief can be granted").
   Whether the subject statements are, in fact, true or false is not
28 relevant to this motion, where the court must assume the truth of
   plaintiff's allegations.

                              6

§ 1125(a).[4]  Specifically, plaintiff contends that defendant caused the Marketing Materials, containing material, false and misleading statements likely to deceive those who see or hear them, to enter interstate commerce, leading to a direct diversion of sales from plaintiff to defendant and a lessening of the goodwill associated with plaintiff's products.  Plaintiff alleges that the Marketing Materials contained the following false and misleading statements, among others: (1) "ARB indicates . . . 22% failure rate found contributing to degradation ISD alarms"; (2) "Customer Options: Option 1: Replace 1 in 4 nozzles to maintain assist site performance"; (3) "Assist nozzles contribute to site maintenance costs"; (4) "the problem in the overwhelming majority of cases are in the Nozzles, not the ISD System or its protocol/software.  Attached are two documents supporting this position; 1) CARB ppt presentation to Capcoa . . . ."  (FAC ¶ 28.)

Defendant contends that plaintiff has not stated a claim under the Lanham Act because: (1) plaintiff inadequately pled false or misleading statements; (2) plaintiff identified statements of opinion rather than fact; (3) defendant's statements are at most puffery; and (4) plaintiff has not adequately alleged injury to its business.

---

[4]   It is not clear under which subsection of § 1125(a) plaintiff is proceeding.  The Ninth Circuit has held that § 1125(a)(1)(A) and § 1125(a)(1)(B) have different standing requirements.  Jack Russell Terrier Network of N. Cal. v. American Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir. 2005) (citations omitted).  While § 1125(a)(1)(A) is known as the "false association" prong, § 1125(a)(1)(B) is known as the "false advertising" prong.  As the complaint alleges only those elements relevant to § 1125(a)(1)(B), the court infers that this is the prong under which plaintiff brings its cause of action.

The central focus of the Lanham Act is to prevent false or misleading representations in promoting a product in the marketplace. See Mutual Pharm. Co. v. Ivax Pharms., Inc., 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006). As such, "the Lanham Act is primarily intended to protect commercial interests from being harmed by the unfair competition created by a competitor . . . using false or misleading advertising" to promote its products. Id. at 933 (citations omitted). In order to make out a false advertising claim under § 1125(a) of the Lanham Act, a plaintiff must prove the following five elements: (1) in its advertisements, the defendant made false statements of fact about its product or the product of another; (2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its falsely advertised goods to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public. Cook, 911 F.2d at 244.

In its motion to dismiss, defendant first asserts that plaintiff has not adequately pleaded facts or misleading statements, arguing that a comparison of its own statements with the information released by ARB establishes the truth of defendants' statements. Such an inquiry, however, is not appropriate at this stage in the proceedings. See Cook, 911 F.2d at 245. Rather, at issue now is solely the sufficiency of

8

plaintiff's pleading--whether the claims alleged are sufficient under the relevant laws.  In rendering this decision, the court must accept plaintiff's allegations as true.

Here, plaintiff alleges defendant's statements were false in the following ways: (1) ARB did not find a 22% failure rate for the Healy System, nor that one in four Healy Systems needed to be replaced; (2) the Healy System does not "contribute to site maintenance costs"; and (3) ARB has not reached the conclusion that the Healy System is causing the false alarms.  (FAC ¶¶ 29-31.)  Assuming the truth of these allegations, as it must, the court finds that plaintiff has sufficiently pled false statements of fact by defendant.

Defendant next contends that its statements were mere opinions and as such, are not actionable under the Lanham Act.  "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact.  Statements of opinion are not generally actionable under the Lanham Act."  Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 731 (9th Cir. 1999).  By comparison, statements that are literally false, or, though literally true, likely to confuse or mislead consumers are actionable under the Lanham Act.  Groden v. Random House, 61 F.3d 1045, 1051 (2d Cir. 1995); see also Coastal, 173 F.3d at 731 (stating that an actionable statement under the Lanham Act is one that is "specific and measurable . . . capable of being proved false or of being reasonably interpreted as a statement of objective fact").

1    Plaintiff alleges defendant made the following false,
2  specific and measurable statements with respect to the Healy
3  System: ARB found 22% failure rate; one in four nozzles must be
4  replaced; assist nozzles contribute to site maintenance costs;
5  and the problem in the majority of false alarm cases are in the
6  nozzles. (FAC ¶ 28.) Accepting plaintiff's allegations as true,
7  these assertions represent misdescriptions of specific or
8  absolute characteristics of the Healy System and as such, are not
9  mere opinions. Furthermore, defendant's contention that its
10 statements represent an opinion about the ARB regulations is
11 unavailing; as noted above, plaintiff alleges defendant's false
12 statements represent factual assertions about the Healy System.
13 (FAC ¶ 24.)

14   Alternatively, defendant argues its statements constitute
15 mere puffery, rendering them immune from liability under the
16 Lanham Act. Puffery is often described as "involving outrageous
17 generalized statements, not making specific claims, that are so
18 exaggerated as to preclude reliance by consumers." <u>Cook</u>, 911
19 F.2d at 246. For example, "advertising which merely states in
20 general terms that one product is superior is not actionable."
21 <u>Id.</u>; <u>see also</u> <u>Lipton v. Nature Co.</u>, 71 F.3d 464, 474 (1965)
22 (stating "[s]ubjective claims about products, which cannot be
23 proven either true or false, are not actionable under the Lanham
24 Act"). Conversely, "misdescriptions of specific or absolute
25 characteristics of a product are actionable." <u>Cook</u>, 911 F.2d at
26 246. The Ninth Circuit has expressly recognized the propriety of
27 a Rule 12(b)(6) motion to dismiss to determine whether or not a
28 statement is non-actionable puffery. <u>Id.</u> at 245.

1    In this case, defendant's alleged statements, identified

2  above, constitute more than mere generalizations; they represent

3  specific characterizations about the Healy System which, if true,

4  are "mischaracterizations" beyond the scope of mere puffery.  See

5  Cook, 911 F.2d at 246.

6    Finally, defendant contends that plaintiff has not

7  adequately alleged injury to its business.  However, plaintiff

8  claims that, as a result of defendant's actions, it has suffered

9  direct diversion of sales and/or lessening of the goodwill

10  associated with its products.  (FAC ¶ 40.)  Such allegations are

11  sufficient to plead damages under the controlling law.  Southland

12  Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997)

13  (holding that to state a claim for false advertising in violation

14  of the Lanham Act, a plaintiff must plead that it has been or is

15  likely to be injured as a result of the false statement, either

16  by direct diversion of sales from itself to defendant or by a

17  lessening of the goodwill associated with its products).

18    For all of the above reasons, defendant's motion to dismiss

19  plaintiff's claim under § 1125(a) of the Lanham Act is DENIED.

20  **B.**    **Trade Libel**

21    Plaintiff's second cause of action is for trade libel.

22  Plaintiff alleges that defendant: (1) disparaged the quality and

23  performance of the Healy System by falsely stating that one in

24  four Healy Systems fail and that the Healy System caused the

25  false alarms; (2) made the false statements knowingly and with

26  reckless disregard for their truth or falsity; (3) intentionally

27  distributed the Marketing Materials to distributers of the Healy

28  System and Incon ISD; and (4) knew or had reason to know that the

11

false statements would cause pecuniary loss to plaintiff, all of
which resulted in the reduction in plaintiff's market share,
leading to millions of dollars in lost profits.  (FAC ¶¶ 43-49.)

Defendant contends that plaintiff has failed to state a
claim for trade libel because: (1) defendant's statements are
privileged under the First Amendment and California law, and
(2) plaintiff has not alleged special and particularized damages.

"Trade libel is defined as an intentional disparagement of
the quality of property, which results in pecuniary damage to
plaintiff." Erlich v. Etner, 224 Cal. App. 2d 69, 73 (1964).  To
plead a claim for trade libel, a plaintiff must show (1) a
statement that (2) was false, (3) disparaging, (4) published to
others in writing, (5) induced others not to deal with it, and
(6) caused special damages. New.Net, Inc. v. Lavasoft, 356 F.
Supp. 2d 1090, 1113 (C.D. Cal. 2004).  Under federal pleading
requirements, "when items of special damages are claimed, they
shall be specifically stated." Fed. R. Civ. P. 9(g); see also
New.Net, 356 F. Supp. at 1113 (stating that with respect to
special damages, "bare allegation of the amount of pecuniary loss
is insufficient for the pleading of a trade libel claim").
Furthermore, if the plaintiff alleges special damages based on a
general loss of customers, the plaintiff should prove "facts
showing an established business, the amount of sales for a
substantial period preceding the publication, the amount of sales
subsequent to the publication, [and] facts showing that such loss
in sales were the natural and probable result of such
publication." New.Net, 356 F. Supp. at 1113; see also Allen v.
The Ghoulish Gallery, No. 06cv371 NLS, 2007 U.S. Dist. LEXIS

12

86224, *48-49 (dismissing the plaintiff's trade libel claim
because he did not show his sales numbers before and after the
publication, and did not prove that the statement caused any
alleged decline in sales).

Here, defendant moves to dismiss plaintiff's claim for trade
libel, contending that plaintiff failed to allege with sufficient
specificity its special damages.  However, plaintiff states that
it has suffered lost sales, evidenced by its decreased market
share from 95% to 50%-75%.  (FAC ¶ 48.)  Plaintiff further
alleges that this decrease in sales and market share occurred
because of defendant's dissemination of the false Marketing
Materials.  (Id.)  As such, the court finds that plaintiff has
sufficiently pled special damages.

Furthermore, defendant's claim of immunity under the First
Amendment and California law also fails.  "Under California law,
'First amendment limitations are applicable to all claims, of
whatever label, whose gravamen is the alleged injurious falsehood
of a statement.'"  Films of Distinction v. Allegro Film Prods.,
12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (citations omitted).
"If the defendants' statements about the plaintiff's product or
service are protected opinion, the cause of action for trade
libel must fail."  Id.  "Only false statements of fact are
subject to defamation or trade libel liability; statements of
opinion are protected by the First Amendment unless they 'imply a
false assertion of fact.'"  Vondran v. McLinn, No. C 95-20296
RPA, 1995 U.S. Dist. LEXIS 21974, *14-15 (citing Milkovich v.
Lorain Journal Co., 497 U.S. 1, 19 (1990)).  "In addition, the
First Amendment protects statements of rhetorical hyperbole,

1  subjective views and conjecture, but not statements based on

2  objectively verifiable facts." Id. at *15.  Thus, where

3  statements are capable of being proven true or false, they are

4  not expressions of opinion and therefore are not protected by the

5  First Amendment.  Id.  As stated above, the statements plaintiff

6  identifies as constituting trade libel are factual statements

7  that may be proven true or false.  (See FAC ¶ 28.)  As such,

8  defendant's argument that its assertions were mere opinion and

9  thus protected by the First Amendment must fail.

10       Finally, defendant's competition-privilege argument is

11  likewise unavailing.

12       California law has long recognized a 'competition
         privilege' which protects one from liability for
13       inducing a third person not to enter into a prospective
         contractual relation with a business competitor.  The
14       privilege applies where '(a) the relation [between the
         competitor and third person] concerns a matter involved in
15       the competition between the actor and the competitor, and
         (b) the actor does not employ *improper means*, and (c) the
16       actor does no intend thereby to create or continue an
         illegal restraint of competition, and (d) the actor's
17       purpose is at least in part to advance his interest in his
         competition with the other.'  In short, the competition
18       privilege furthers free enterprise by protecting the right
         to compete *fairly* in the marketplace.

19

20  Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc., 95 Cal. App.

21  4th 1249, 1256 (2002) (emphasis in original).  Where a plaintiff

22  alleges that the defendant competed through improper or illegal

23  means, the competition privilege does not apply.  Id.; see also

24  Consortium Info. Servs. v. Experian Info. Solutions, G037712,

25  2007 Cal. App. Unpub. LEXIS 7200, *15-16 (Sep. 5, 2007) (holding

26  that because plaintiff alleged defendant competed through the

27  improper means of trade libel, the competition privilege did not

28  apply).

1    Here, plaintiff has alleged that defendant competed through

2  improper means; specifically, by accusing defendant of competing

3  with "reckless disregard" or "knowledge of [the] falsity" of its

4  statements and by incorporating its previous allegation that

5  defendant competed through trade libel.  (FAC ¶¶ 43, 45.)  As

6  such, defendant's argument that plaintiff's claim is barred by

7  the competition-privilege is without merit.

8    For these reasons, defendant's motion to dismiss plaintiff's

9  trade libel claim is DENIED.

10  **C.**    **False Advertising**

11    Plaintiff's third cause of action is for false advertising

12  pursuant to California Business and Professions Code § 17500.

13  Specifically, plaintiff alleges defendant's false and misleading

14  statements contained in the Marketing Materials are likely to

15  deceive or have the tendency to deceive a substantial segment of

16  those who see or hear them, resulting in direct diversion of

17  sales and/or lessening of the goodwill associated with

18  plaintiff's product.

19    Defendant contends that plaintiff has not stated a claim for

20  false advertising because the relevant statements are not false

21  or misleading and are statements of opinion, rather than fact.

22    Section 17500 of California's Business and Professions Code

23  makes it unlawful for a business to disseminate any statement

24  "which is untrue or misleading, and which is known, or which by

25  the exercise of reasonable care should be known, to be untrue or

26  misleading . . ."  Cal. Bus. & Prof. Code § 17500.  This

27  provision has been "interpreted broadly to embrace not only

28  advertising which is false, but also advertising which although

15

1   true, is either actually misleading or which has a capacity,

2   likelihood or tendency to deceive or confuse the public." <u>Leoni</u>

3   <u>v. State Bar</u>, 39 Cal. 3d 609, 626 (1985).  Whether the public

4   actually has been or will be misled for purposes of a claim under

5   the false advertising law is, in general, a factual question that

6   cannot be resolved on a motion to dismiss.  <u>Cairns v. Franklin</u>

7   <u>Mint Co.</u>, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998).

8        However, "[g]eneralized, vague, and unspecified assertions

9   constitute 'mere puffery' upon which a reasonable consumer could

10  not rely, and hence are not actionable." <u>Anunziato v. eMachines</u>

11  <u>Inc.</u>, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing <u>Glen</u>

12  <u>Holly Entm't, Inc. v. Tektronix Inc.</u>, 343 F.3d 1000, 1005 (9th

13  Cir. 2003)); <u>see also</u> <u>Summit Tech., Inc. v. High-Line Med.</u>

14  <u>Instruments, Co.</u>, 933 F. Supp. 918, 931 (C.D. Cal. 1996) (stating

15  "[p]uffery is often described as involving outrageous generalized

16  statements, not making specific claims, that are so exaggerated

17  as to preclude reliance by consumers").  However, where at least

18  some actionable statements have been pled, a claim cannot be

19  dismissed on the ground that some statements constitute mere

20  puffery.  <u>Anunziato</u>, 402 F. Supp. at 1139.

21       Finally, with respect to issues of public concern, one may

22  not "immunize false or misleading product information from

23  government regulation simply by including references to public

24  issues." <u>Kasky v. Nikey, Inc.</u>, 27 Cal. 4th 939, 966 (citing

25  <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 68 (1983)).

26  Indeed, advertising which "'links a product to a current public

27  debate' is not thereby entitled to the constitutional protection

28  afforded noncommercial speech." <u>Bolger</u>, 463 U.S. at 68.

1    As set forth above, the false statements that defendant

2 allegedly disseminated through the Marketing Materials include

3 allegations that go beyond mere puffery, or "generalized

4 statements."  Furthermore, defendant's attempt to protect its

5 alleged statements by asserting that its statements are

6 constitutionally protected because they touch upon matters of

7 "public concern" must also fail.  Regardless of whether

8 defendant's statements can be characterized as touching upon a

9 public debate, they nevertheless concern *allegedly* "false or

10 misleading product information."  As such, defendant cannot

11 invoke constitutional immunity simply by "including reference to

12 public issues."  See Kasky, 27 Cal. 4th at 966.

13    Accordingly, defendant's motion to dismiss plaintiff's false

14 advertising claim is DENIED.

15 **D.   Unfair Competition**

16    Plaintiff's fourth claim for relief is for unfair

17 competition pursuant to California Business and Professions Code

18 § 17200.  Specifically, plaintiff claims that because defendant's

19 conduct allegedly constitutes a violation of the Lanham Act and

20 also significantly threatens or harms competition through the use

21 of unfair, deceptive, untrue, and misleading advertising,

22 defendant has violated Section 17200.

23    Defendant contends that plaintiff has not adequately

24 asserted a claim under Section 17200 because it has failed to

25 meet the California pleading standard of stating with reasonable

26 particularity the facts supporting the statutory elements of the

27 violation.

28

17

1    Under Section 17200, "unfair competition is defined to
2  include 'unlawful, unfair, or fraudulent business practice and
3  unfair, deceptive, untrue or misleading advertising.'"  <u>Summit</u>
4  <u>Tech. v. High-Line Medical Instruments, Co.</u>, 933 F. Supp. 918,
5  942 (C.D. Cal. 1996) (citing <u>People v. McKale</u>, 25 Cal. 3d 626,
6  631-32 (1979)).  "It is broadly defined to include 'anything that
7  can properly be called a business practice and that at the same
8  time is forbidden by law.'"  <u>Id.</u> (citations omitted).  Indeed,
9  "[f]alse and misleading representations necessarily constitute
10  unfair business practices within the meaning of that statute.
11  This section is designed to protect consumers against fraud and
12  deceit as well as to protect competitors, and is broadly
13  interpreted to bar all ongoing wrongful business activity in any
14  context in which it appears."  <u>People v. Dollar Rent-A-Car Sys.</u>,
15  211 Cal. App. 3d 119, 129 (1989).  Furthermore, under Section
16  17200, a plaintiff "may address violations of the California
17  Sherman Act, California Legal Remedies Act, the Lanham Act (so
18  long as the Lanham Act claims are not merely vehicles for claims
19  under the FDCA or FDA regulations), and Cal. Bus. & Prof. Code §
20  17500."  <u>Summit Tech.</u>, 933 F. Supp. at 943.

21    With respect to pleading unfair competition, "[w]hile the
22  elements of the UCL Claim derive from state substantive law, the
23  degree of specificity required is governed by the Federal Rules
24  of Civil Procedure."  <u>Silicon Image, Inc., v. Analogix</u>
25  <u>Semiconductor, Inc.</u>, No. C-07-0635 JCS, 2007 U.S. Dist. LEXIS
26  39599, *9 (N.D. Cal. May 16, 2007) (citing Taylor v. U.S., 921
27  F.2d 1428, 1432 (9th Cir. 1987)).  "Under Rule 8(a), a plaintiff
28  is required to provide only a 'short and plain statement of the

18

claim showing that the pleader is entitled to relief.'"   Id.
Thus, so long as the claim alleges the theory upon which the UCL
claim is based, it is sufficient to meet the "fair notice"
requirement under Rule 8(a).   See id. at *10.

Here, because plaintiff bases its unfair competition claim
upon allegedly false and misleading statements disseminated by
defendant and also predicates its claim on its assertion of a
violation of the Lanham Act, the court finds that plaintiff has
sufficiently pled its fourth cause of action.   Thus, defendant's
motion to dismiss plaintiff's claim for unfair competition is
DENIED.

**E.   Intentional Interference with Prospective Economic Relations**

Plaintiff's fifth cause of action is for intentional
interference with prospective economic relations.   Defendant
contends that plaintiff has not sufficiently pled this claim
because it has not alleged defendant actually disrupted an
economic relationship using "wrongful" means and that, but for
the interference, there was a reasonable probability that a
contract would have been obtained.

"To state a claim for intentional interference with economic
advantage, plaintiff must allege: (1) an existing economic
relationship or one 'containing the probability of future
economic benefit'; (2) knowledge by the defendant of the
relationship; (3) acts by defendant designed to disrupt the
relationship; (4) actual disruption of the relationship; (5)
damages proximately caused by the acts of the defendant.
Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d
941, 956 (N.D. Cal. 2003).   The California Supreme Court has

added what functions as a sixth element that "the act must be 'wrongful by some legal measure other than the fact of the interference itself." Id. (citing Della Penna v. Toyota Motor Sales, U.S.A., 11 Cal. 4th 376, 393 (1995)). "Thus, it is 'plaintiff['s] burden to prove, as an element of the cause of action itself, that the defendant['s] conduct was independently wrong." Id. "An act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, regulatory, common law, or other determinable legal standard." Korea Suplly Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 (2003). Thus, because a plaintiff need only plead and prove that the alleged conduct is unlawful for reasons other than that it interfered with a prospective economic advantage, pleading a UCL violation may supply the requisite independently wrongful act. See CRST Van Expedited, Inc. v. Werner Enters., 479 F.3d 1099, 1109-10 (citing Stevenson Real Estate Servs, Inc. v. CB Richard Ellis Real Estate Servs, Inc., 138 Cal. App. 4th 1215, 1224 (2006)).

    As set forth above, because the court does not dismiss plaintiff's other causes of action based on the same alleged wrongdoing by defendant, plaintiff's claim for intentional interference with prospective economic relations also survives since these other causes of action sufficiently allege "independently wrongful conduct."

    Furthermore, to the extent defendant seeks to dismiss this claim for failure to allege that plaintiff's damages were proximately caused by defendant, the court finds plaintiff has sufficiently pled this element as well.  Plaintiff alleges that

by disseminating the false statements contained in the Marketing
Materials, defendant intentionally interfered with its
prospective economic relationships by inducing its customers to
refrain from purchasing Franklin's products or otherwise
conducting business with Franklin, and that as a result, Franklin
suffered damages.  (FAC ¶¶ 69, 72.)  Assuming these allegations
to be true, the court finds plaintiff's pleading sufficient.

Accordingly, defendant's motion to dismiss plaintiff's claim
for intentional interference with prospective economic relations
is DENIED.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss
pursuant to Rule 12(b)(6) is DENIED in its entirety.

IT IS SO ORDERED.

DATED: August 11, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE