UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

FRANKLIN FUELING SYSTEMS,
INC.,

                              CIV. NO. S-09-580 FCD/JFM

        Plaintiff,

    v.                              MEMORANDUM AND ORDER

VEEDER-ROOT COMPANY and DOES 1
through 20,

        Defendants.
                      ----oo0oo----

    This matter is before the court on plaintiff Franklin
Fueling Systems, Inc.'s ("plaintiff") motion to sever defendant
Veeder-Root Company's ("defendant") counterclaim, or
alternatively, to order separate trials.  Defendant opposes the
motion, arguing it should be denied in its entirety, or
alternatively, the court should defer ruling on the propriety of
separate trials.  For the reasons set forth below, plaintiff's
motion to sever defendant's counterclaim is DENIED, and the court
DEFERS ruling on plaintiff's alternative request for separate

trials.[1]  Plaintiff may renew that motion, following the close of discovery, at a time closer to trial.

**BACKGROUND**

Plaintiff and defendant both market Phase II Enhanced Vapor Recovery ("EVR") products in California, which are designed to capture gasoline vapor released during vehicle refueling.  (Am. Compl., filed May 26, 2009, ¶ 2.)  There are several different types of Phase II EVR products, including the EVR System (which is comprised of the nozzle, dispenser and related components) and the in-station diagnostic system, or ISD System (which monitors the performance of the EVR System and triggers warnings and alarms if it fails to perform as required).  (Id. at ¶ 3.)

Plaintiff manufactures an EVR System called the Healy System and an ISD System called the INCON ISD.  (Id. at ¶s 4, 8.) Defendant markets a competing EVR System and ISD System (the "Veeder-Root ISD System").  (Id. at ¶ 9.)

In the latter half of 2008, gas station owners began to report a number of alarms being triggered when the Veeder-Root ISD System was used with the Healy System, including many false alarms.  (Id. at ¶ 25.)  The California Air Resources Board ("ARB") began investigating the alarms.  (Id.)  Starting on or about February 12, 2009, plaintiff alleges defendant began circulating marketing materials that contained a number of false statements about the Healy System, including that ARB had found a 22% failure rate for the Healy System in its investigation of the

---

[1]   Because the court finds that oral argument will not be of material assistance, the court orders this matter submitted on the briefs.  E.D. Cal. L.R. 78-230(h).

alarms, and that one in four Healy Systems would need to be
replaced to maintain "site performance."  (Id. at ¶s 27-28.)
After defendant continued to make these representations to
distributors and other potential customers of plaintiff,
plaintiff alleges it was forced to file the instant suit on March
2, 2009.  Plaintiff thereafter filed an amended complaint on May
26, 2009, alleging claims for false and misleading advertising in
violation of the federal Lanham Act and state law claims for
trade libel, false advertising, unfair competition and
intentional interference with prospective economic advantage.

     On August 25, 2009, defendant filed an answer and
counterclaim to plaintiff's first amended complaint (Docket #35).
By its counterclaim, defendant alleges claims for intentional and
negligent misrepresentation against plaintiff based on the
following facts:

     One of the key components of the Healy System is the nozzle.
California service station owners began experiencing problems
with the Healy System in late 2006.  However, defendant alleges
that rather than accept responsibility for the flaws in its
product, plaintiff's "modus operandi has been to blame others,
namely defendant, which manufactures a competing ISD system."
(Counterclaim at ¶ 2.)   More specifically, defendant alleges
that during the Summer of 2007, California service station owners
and operators using the Healy System and Veeder-Root ISD System
started experiencing numerous ISD system warnings and alarms.
Defendant claims plaintiff later admitted the problem was
attributable to an undisclosed component change in the Healy 900
Series EVR Nozzle.  But, for several months, plaintiff "embarked

on a deliberate campaign to conceal this fact from its customers,
[defendant], and the [ARB], charged with regulating EVR
products." (Id. at ¶ 3.)  Defendant alleges that in reliance on
plaintiff's false representations that there had been no changes
to the Healy System (including the nozzles), the ARB and
defendant conducted an extensive investigation into other
potential causes for the ISD system warning and alarm problem.
Defendant contends that it was only after plaintiff was caught
trying to manipulate results of an ARB test that plaintiff
finally admitted that it had known all along about the material
change to the Healy System nozzles. (Id. at ¶ 4.)  The ARB,
defendant alleges, later confirmed that the component change to
the nozzles was the root cause of the alarm problem, and
ultimately, it decertified all Healy 900 Series EVR Nozzles
manufactured or rebuilt in 2007.  As a result, plaintiff was
forced to recall its product in February 2008. (Id. at ¶ 5.)
The ARB later issued a Notice of Violation to plaintiff for its
failure to obtain approval from the agency before making the
component change.  (Id. at ¶ 6.)

However, by that point, defendant alleges it already
expended significant funds and personnel time investigating
alternative causes for the ISD system warnings and alarms, and
that it was further damaged in the marketplace by plaintiff's
repeated denials and efforts to blame the ISD system warnings and
alarms on the Veeder-Root ISD System.  By blaming defendant's
system, plaintiff "encouraged customers to drop the Veeder-Root
ISD [S]ystem in favor of [plaintiff's] [INCON] ISD." (Id. at
¶ 7.)

4

Defendant asserts that while these actions by plaintiff occurred in the marketplace in 2007, they are part of a broader pattern of deceptive behavior by plaintiff that continues to date.  (<u>Id.</u> at ¶ 8.)  For example, defendant alleges plaintiff has told customers in response to the occurrence of false alarms occurring in 2008, that the Veeder-Root ISD System has a higher propensity to trigger alarms than the INCON ISD.  Defendant claims that plaintiff continues to misrepresent the facts, alleging on information and belief, that plaintiff "has made unauthorized changes to the [INCON] ISD system software" in order to "mask the defects in the Healy System that are recognized by the Veeder-Root ISD System."  (<u>Id.</u> at ¶ 9.)

**STANDARD**

### 1.   <u>Severance of Claims</u>

Permissive joinder of claims is the rule, not the exception, in federal court.  Federal Rule of Civil Procedure 18(a)[2] encourages a party to bring "as many claims as it has against an opposing party" in a single action.  Under Rule 20(a), parties may join to an existing action any claim arising from "the same transaction, occurrence, or series of transactions or occurrences" that involve "common" questions of law or fact. "The purpose of [Rule 20(a)] is to address the 'broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." <u>Allen v. Woodford</u>, Nos. 05-1104, 05-1282, 2006 WL 3825008, *15 (E.D. Cal. Dec. 26, 2006).  Permissive joinder advances the Rules'

---

[2]   All further references to a "Rule" are to the Federal Rules of Civil Procedure.

5

goals of efficiency and fairness by discouraging "piecemeal litigation and inconsistent results." <u>Gaston v. Gottesman</u>, No. 06-7840, 2007 WL 1114014, *3 (N.D. Cal. Apr. 13, 2007); Schwarzer, et al., <u>Federal Civil Procedure Before Trial, California and 9th Cir. Ed.</u>, at § 7:138 ("Rutter Guide") (noting that "[t]he requirements governing permissive joinder are construed liberally in order to promote trial convenience and to expedite final determination of disputes"). Accordingly, while Rule 21 permits this court to sever claims, courts generally disfavor such motions, placing a high burden on the moving party to show significant prejudice absent severance of the claim, and that the issues to be severed are truly distinct and separable. <u>See</u> <u>League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency</u>, 558 F.2d 914, 917 (9th Cir. 1977); <u>Equal Rights Ctr. v. Equity Residential</u>, 483 F. Supp. 2d 482, 289 (D. Md. 2007).

### 2. **Separate Trials of Claims**

Rule 42(b) governs orders directing separate trials of claims. The Rule provides in pertinent part: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Thus, the Ninth Circuit has recognized that severance for purposes of trial is proper to further the convenience of the parties, to avoid prejudice or to simplify issues for the jury and reduce the danger of unnecessary jury confusion, when the issues are clearly separable. <u>Hirst v. Gertzen</u>, 676 F.2d 1252, 1261 (9th Cir. 1982).

ANALYSIS

## 1.  <u>Severance of Claims</u>

As reflected above, the claims stated in plaintiff's amended complaint and defendant's counterclaim involve the same products (the Healy System, INCON ISD and Veeder-Root ISD System), the same market (the California vapor recovery market), the same problem (unexplained ISD alarms), as well as the same key players.  The events at issue in the two complaints also occurred close in time.  Indeed, it is defendant's theory, both in defense of plaintiff's complaint and in its affirmative action, that plaintiff's conduct in 2007 and 2008 is part of the same occurrence giving rise to the parties' dispute in 2009; namely, plaintiff's alleged "sustained two-year campaign to shift blame for all ISD-related alarms in California away from itself and onto to others, [specifically] [defendant]."  (Opp'n, filed Oct. 30, 2009, at 5:6-7.)

Rule 20(a) does not require identity of facts.  Instead, claims should be joined in one action where they are part of the same "*series* of transactions or occurrences."  Fed. R. Civ. P. 20(a).  The Rules require that all claims arising from "logically related events" be decided in a single action.  Wright, et al., <u>Federal Practice and Procedure</u>, § 1653 at 409 (3d Ed. 2001); <u>Coughlin v. Rodgers</u>, 130 F.3d 1348, 1350 (9th Cir. 1997) (holding that the same transaction requirement "refers to *similarity* in the factual background of a claim").  These requirements are flexbile concepts and are to be read as broadly as possible whenever doing so is likely to promote judicial economy.  Wright, et al., <u>Federal Practice and Procedure</u>, § 1653 at 415 (3d Ed.

7

1    2001).  Given the similarity in circumstances in this case, there

2    is, at the very least, a "logical relationship" between the ISD

3    alarm problems that California service station owners experienced

4    in 2007 and 2008.  As such, the court finds that the claims are

5    properly joined in this one proceeding.  Rutter Guide at 7-D at

6    § 7:141 (noting that the requirement that the right to relief

7    arise from the "same transaction, occurrence or series of

8    transactions or occurrences" is satisfied if there is a "logical

9    relationship between the claims joined").[3]

10        Moreover, severance of the claims would create

11   inefficiencies.  Both claims involve nearly identical questions

12   relating to the design and performance of the Healy System and

13   Veeder-Root ISD System and how the two products interact with

14   each other.  There is also some overlap in the legal issues,

15   given the two products were governed by the same ARB regulations

16   throughout 2007 and 2008.  As a result, defendant states that it

17   anticipates that many of the same witnesses will be relevant to

18   both claims.  While plaintiff disputes this assertion,

19   considering the factual and legal overlap in the two claims,

20   defendant's expectation is reasonable.

21

22        [3]    Plaintiff's reliance on CVI/Beta Ventures, Inc. v.
     Custom Optical Frames, Inc., 896 F. Supp. 505 (D. Md. 1995) and
23   Tab Express Int'l, Inc. v. Aviation Simulation Technology, Inc.,
     215 F.R.D. 621 (D. Kan. 2003) is unavailing.  Not only are these
24   decisions not binding on this court, they are factually
     distinguishable and thus do not support severing the counterclaim
25   in this case.  In CVI/Beta, the counterclaim at issue involved a
     different product (eyeglass temples as opposed to eyeglass frames
26   at issue in the complaint) and different parties (the
     counterclaim was brought against only one of the plaintiffs).  In
27   Tab Express, primarily driving the court's decision to sever the
     counterclaim was its finding that the counterclaim was not
28   properly venued in the same court as the complaint.

                                  8

1    Finally, plaintiff fails to identify any prejudice it will

2    suffer *pre-trial* by litigating the two claims in one proceeding.

3    At most, plaintiff raises the possibility of prejudice at trial

4    due to jury confusion and/or the admission of what plaintiff

5    contends would be improper character evidence against it.

6    However, such possible prejudice *at trial* does not justify

7    severing the counterclaim for *pre-trial* purposes.

8        Contrary to plaintiff's argument, plaintiff's actions in

9    2007 are not wholly irrelevant to its claims against defendant

10   arising in 2008 and 2009.  Defendant emphasizes that plaintiff's

11   reputation in the marketplace before the events at issue in the

12   amended complaint are important to defendant's defenses to

13   plaintiff's claims.  For example, to rebut plaintiff's claim that

14   defendant's marketing practices were the proximate cause of any

15   loss of sales plaintiff suffered, defendant indicates it will

16   attempt to show that customers' decisions were influenced by

17   other factors, including plaintiff's alleged, preexisting

18   reputation for being a dishonest supplier with an unreliable

19   product.  Plaintiff has specifically put its reputation at issue

20   in this case, asserting that due to defendant's actions it has

21   lost customer goodwill.  Defendant expects to try to counter that

22   allegation with evidence that plaintiff's loss of goodwill has

23   been caused by plaintiff's own bad acts, including its 2007

24   conduct regarding the Healy System nozzle, the alleged coverup of

25   the problem, the recall and the ARB Notice of Violation.  Thus,

26   even putting aside defendant's counterclaim, plaintiff's alleged

27   actions in 2007, relating to the Healy System nozzle, are

28   relevant to the action as defendant expects to defend plaintiff's

1 claims in part based on this alleged conduct.[4]  At a minimum,

2 these facts demonstrate why joinder of plaintiff's and

3 defendant's claims is appropriate, at least for pre-trial

4 purposes.

5        **2.   <u>Separate Trials of Claims</u>**

6        While plaintiff asserts that it would be unfairly prejudiced

7 at trial if defendant's counterclaim is adjudicated in the same

8 proceeding as its complaint, until discovery in this matter is

9 complete, the court lacks an adequate record to determine whether

10 separate trials are warranted.  Indeed, to date, no discovery has

11 taken place between the parties.  Thus, the court has no basis to

12 assess the veracity of plaintiff's claims about the purported

13 unrelatedness of its conduct in 2007 and 2008, what prejudice, if

14 any, plaintiff stands to suffer if the claims are tried in one

15 proceeding, whether there is any risk of jury confusion or

16 whether defendant will be prejudiced by having to try its

17 counterclaim separately.  <u>See</u> <u>Allen</u>, 2006 WL 3825008, *17

18 (denying pre-discovery motion to sever and noting that "[i]t is

19 too early in the litigation to determine whether and to what

20 extent the evidence will prejudice the Defendants").

21 Accordingly, the court will defer ruling on plaintiff's request

22 for separate trials.  Plaintiff may renew its motion, following

23 the close of discovery, but prior to the dispositive motion cut-

24

25        [4]   The court's discussion of the "relevance" of certain
   possible evidence is for the purposes of this motion only.
26 Whether any such evidence is ultimately discoverable or
   admissible for purposes of trial is not at issue on this motion.
27 Instead, the court discusses relevance here only in the context
   of ascertaining whether there is a "logical relationship" between
28 the claims to support joinder.

1    off.

2                          **CONCLUSION**

3         For the foregoing reasons, the court DENIES plaintiff's

4    motion to sever defendant's counterclaim from this action.  The

5    court DEFERS ruling on plaintiff's alternative request to order

6    separate trials of its complaint and the counterclaim; plaintiff

7    may renew that motion, following the close of discovery, at a

8    time closer to trial.

9         IT IS SO ORDERED.

10   DATED: November 17, 2009.

                                  _____
                                  FRANK C. DAMRELL, JR.
                                  UNITED STATES DISTRICT JUDGE